## Dallett v. Taggart, Appellant.

*Will—Trusts and trustees—Separate use trust—Married woman—Act of June 4, 1879, P. L. 88.*

The will of a married woman executed during coverture will not upon her death, after having survived her husband, pass title to real estate vested in her to her sole and separate use.  Such a will made under the disability of coverture, is a nullity, and there is nothing in the act

of June 4, 1879, which will give it life. It was not the purpose of that act to create a disposing power in a testator just before his death, which he did not possess when he executed his will.

Argued Oct. 26, 1908. Appeal, No. 132, Oct. T., 1908, by defendants, from judgment of C. P. No. 2, Allegheny Co., April T., 1906, No. 435, on verdict for plaintiffs in case of Margaret B. Dallett and Morris Dallett, her husband, in right of his wife, v. Jane B. Taggart et al. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, ELKIN and STEWART, JJ. Affirmed.

Ejectment for land in the second ward of the city of Pittsburg. Before SHAFER, J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiffs. Defendants appealed.

*Error assigned* among others was in refusing binding instructions for defendants.

*William A. Jordan*, with him *George P. Murray*, for appellants.—A separate use trust is an estate created in behalf, and for the benefit of a woman, at the time married, or in immediate contemplation of marriage.

Its purpose, as described by the courts of this commonwealth, is " to protect a married woman from her ignorance, her folly, or her overweening confidence in her husband:" People's Savings Bank v. Denig, 131 Pa. 241.

Being only for the protection of the wife during coverture, it becomes executed upon the death of her husband, and she then has full power and control over it: Koenig's Appeal, 57 Pa. 352; Dodson v. Ball, 60 Pa. 492; Quin's Estate, 144 Pa. 444; Wright v. Brown, 44 Pa. 224, 239; Broe v. Boyle, 108 Pa. 76.

*John Douglass Brown*, with him *Lewis & Newmyer*, for appellees.—This court has decided that whether in the absence of express authority given by the instrument creating the trust a married woman can pass property settled to her separate use by will is no longer doubtful. In an opinion delivered by the present chief justice, it was held that it is no longer a question that she has no such power and that notwithstand-

ing the acts of 1848 and 1887, the court would not depart from the rule established in Thomas v. Folwell, 2 Whart. 11, and thereafter uniformly followed: Steinmetz's Estate, 168 Pa. 175.

This court has also decided that this rule is unaffected by the act of June 4, 1879, providing that wills shall be construed with reference to the property comprised therein " to speak and take effect as if executed immediately before the testator's death," and that since that act as before the power or capacity of the testator and the legality of his disposition of his estate, must be determined as of the date of the will: Neale's Estate, 104 Pa. 214; Quin's Estate, 144 Pa. 444; Packer v. Packer, 179 Pa. 580.

OPINION BY MR. JUSTICE STEWART, January 4, 1909:

This was an action of ejectment. The plaintiffs stand in relation to the title as the successors of William B. Kilgore, one of the six children of Mrs. Mary E. Kilgore, deceased. The facts are these: William Barker, by deed dated December 28, 1863, conveyed to Mrs. Kilgore, his married niece, for a nominal consideration, a lot of ground fronting on Smithfield street in the city of Pittsburg, for her sole and separate use, her heirs and assigns, subject to the use and occupancy of the premises by the grantor's wife, Fanny, during her natural life. By deed dated March 22, 1867, Mrs. Kilgore, her husband, Jesse V. Kilgore, joining in the deed, reconveyed to William Barker the property described in deed of March 28, 1863. William Barker died May 30, 1869. By his will bearing date December 31, 1868, he devised as follows: "I give and devise to my niece, Mary E. Kilgore, the dwelling house on Smithfield street, in which I now reside, together with the household furniture, to have and to hold during the period of her natural life, and after the death of my said niece Mary D. Kilgore, I give and devise the said dwelling house to the children of the said Mary E. Kilgore, their heirs and assigns forever." The property here devised is the same as that described in the conveyance and reconveyance above referred to. Mrs. Kilgore survived her husband some seven months, and died July 11, 1905. By her last will dated October 3, 1901, and codicil dated April 14, 1902, she directed the sale of her real estate,

giving one-third of her estate to her husband, $1,000 to her son, William B. Kilgore, and dividing the residue between her five remaining children. The plaintiffs in the action, representing William B. Kilgore, claimed to recover one undivided one-sixth interest in the real estate which was the subject of the devise under the will of William Barker to Mrs. Kilgore for life, with remainder to her children. Their right was rested on several grounds: first, that the conveyance from William Barker to Mrs. Kilgore did not in law create a sole and separate use in her; second, that if it did, the reconveyance by Mrs. Kilgore and her husband to the settlor extinguished it, and reinvested William Barker with full ownership; third, adverse possession for more than twenty-one years; and, fourth, positive acts of estoppel on the part of Mrs. Kilgore and her other children. A verdict was directed for the plaintiffs. Subsequently a motion for judgment non obstante veredicto upon the whole record was refused: and this appeal results. In the opinion filed by the learned trial judge, the several positions advanced on behalf of the plaintiffs were carefully considered. He held that the documentary evidence showed the equivalent of an express election by Mrs. Kilgore to take under the will of William Barker; and that by reason of a certain agreement in which she and some of her children joined, with respect to a party wall, operated as an estoppel as to those signing; this affecting, however, only two-fifths of the title claimed by the plaintiffs. We do not deem it of importance to refer any more particularly to these considerations, since the case may be readily resolved without regard to them, by the application of a rule which the learned judge fully recognized and applied, and on which, as we read the opinion, he largely rested his conclusions. The court held with entire correctness that the deed from Barker to Mrs. Kilgore created in her a sole and separate use trust, without power of alienation by deed or devise. If the deed of Mrs. Kilgore and her husband operated to reinvest Barker with the title, then by his will, Mrs. Kilgore took an estate for life, with remainder to her children, including of course, her son William B. Kilgore, which Mrs. Kilgore by no act of hers could defeat. If the deed of reconveyance did not so operate, and the separate use trust remained unaffected by it, then upon the death of

Mrs. Kilgore, the property embraced in it would pass to her children, including William B. Kilgore, unless intercepted by her last will. So then if we concede appellants' contention that the attempted reconveyance from Mrs. Kilgore and her husband was nugatory, ineffectual to destroy the separate use trust—a matter upon which it is not necessary to express ourselves—the case must turn on the sufficiency of Mrs. Kilgore's will ; and thus we have the only question in the case that calls for a decision. Mrs. Kilgore's will was made October 3, 1901, during the life of her husband. Had Mrs. Kilgore died before her husband, it could not be pretended that her will could have taken effect. Certainly during his life she would have no power to alienate what was to her separate use : Steinmetz's Estate, 168 Pa. 175. It is argued, however, that though Mrs. Kilgore's will, under which defendants claim, was made while she was under the disability of coverture, yet by virtue of the act of June 4, 1879, it takes effect as if executed immediately before her death, with respect to the real and personal estate embraced therein, and that no disability then existed, her husband being then deceased. The effect here sought to be given the act of June 4, 1879, goes away beyond its purpose. As the learned trial judge shows very clearly, the purpose of the act was not to create a power where none existed before, but simply to make certain that which was left in doubt to greater or less extent by sec. 10 of the Act of April 8, 1833, P. L. 249. In this connection we can do no better than quote from the opinion filed in the case. " It is contended, however, that the Act of June 4, 1879, P. L. 88, has changed the law in this respect. The act provides that every will shall be 'construed,' with reference to the real estate and personal estate comprised in it, to speak and to take effect as if executed immediately before the death of the testator. The mischief to be remedied by that act was one which had been partially remedied by sec. 10 of the act of April 8, 1833. Before the passage of the last-mentioned act a testator could not dispose by his will of after-acquired lands, no matter in what form he undertook to do so. General words, however, in regard to his personal estate, were always construed to apply to such personal estate as he had at the time of his death. By the act of 1833 it was provided that his after-acquired real estate should pass by a general devise.

There still remains certain sometimes misleading difference between the rules of construction as applicable to real and personal estate, and the act of 1879 was accordingly passed to take away the difference in this respect, between the real and personal estate, this intent being further carried out by sec. 2 of the act which provides that lapsed and void devises shall fall into the residue as legacies due in like circumstances. The act does not direct, as contended by defendants, that a will is to speak generally as of the death of the testator." In what is here said we fully concur.

The question raised we regard as definitely settled by the case of Neale's Appeal, 104 Pa. 214. The effort there was to create by will a separate use trust in a granddaughter unmarried, and not at the time having marriage in immediate contemplation. It was contended that under the act of June 4, 1879, the will took effect because conditions which would have warranted the creation of a separate use trust, though not existing at the execution of the will, did exist at the date of the death of the testator, the granddaughter being then married. This court through Mercur, C. J., held that it was a question of testamentary power, and not of construction; that at the time the will was executed there was no power in the testator to create the trust; and that it was not the purpose of the act of June 4, 1879, to create a disposing power in a testator just before his death, which he did not possess when he executed his will. So here, it is a question of power. Mrs. Kilgore when she executed her will had no power under the separate use to alien this property; and the act referred to gave her nothing in the way of power. As well might it be said, that a will made during infancy, becomes effective upon attainment of majority without more, as to claim that the will in question became operative by reason of a subsequent removal of disability. Having been made under a positive disability, it was as though it never had been made; it had no life in it, and life could only be imparted to it by an execution when no disability existed. To speak of it as requiring re-execution or republication is to imply a prior execution or publication, and that cannot be affirmed, at least within the meaning of the law, of an instrument which the party had no power to make, no matter how declared or how attested. The instrument here relied

upon by the defendants as the will of Mrs. Kilgore was wholly ineffectual to pass title to the real estate here in dispute, for the reasons above given.

The assignments of error are overruled.

Judgment affirmed.